LENA MARZULLI v. METROPOLITAN LIFE INSURANCE COMPANY.

Argued November 1, 1910—Decided March 8, 1911.

1. Where there is conflicting testimony as to whether the insured truthfully represented the facts in answer to the insurer's inquiries, a question for the jury was presented.

2. Where testimony was offered at the time for the purpose of showing the relation that existed between the insured and the beneficiary named in the policy for the purpose of showing an insurable interest and testimony was excluded upon the defendant's objection, the failure of the plaintiff to show such relation cannot be taken advantage of by the defendant upon a rule to show cause why the verdict should not be set aside.

----

On rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices TREN-CHARD and MINTURN.

For the plaintiff, *Gaetano M. Belfatto.*

For the defendant, *McCarter & English.*

The opinion of the court was delivered by

MINTURN, J.  The rule to show cause presents for review the record in a suit upon a life insurance policy issued by defendant upon the life of Felix Rizzolo.  The trial of the cause resulted in a verdict for the plaintiff, and the defendant now attacks the justice of that result by alleging in support of the rule that the insured fraudulently warranted to the company in his application for the policy that within two years prior thereto he had not been under the care of a physician; and that he was not connected with the manufacture or sale of ale, wine or liquor; and that he was not addicted to the excessive use of intoxicating liquors.

The defence was rested at the trial upon the issue of the fraudulent representations made by the defendant in the respects referred to, which operated as inducements, upon the truth of which the defendant entered into the contract of insurance.

The questions of fact presented by the testimony upon these issues were properly left to the jury, under the conflicting testimony in the case.  There was testimony *pro et con* upon these questions, but its weight and sufficiency, together with the credibility of the witnesses giving it, were essentially jury questions.

The rule was settled in a case in the Court of Errors and Appeals, presenting facts equally as cogent for the defence as those presented in this case, that where there is a conflict of the evidence, or lack of conclusive and unquestioned proof of the falsity of a warranty, the question is one for the jury. And it was further held that there must exist no rational theory upon which the jury might find the non-falsity of the answers of the insured before the court can direct a verdict

for the defendant. If there be a rational doubt of the falsity of the statements, the case is for the jury. *Henn* v. *Metropolitan Life Insurance Co., 38 Vroom 310.*

The same rule seems to be of universal application. *Ley* v. *Metropolitan Life Insurance Co., 120 Ia. 203; Dorey* v. *Metropolitan Life Insurance Co., 172 Mass. 234; 25 Cyc. 949,* and cases cited.

The refusal of the trial court to nonsuit or to direct a verdict was, therefore, under the conflicting testimony in the case, entirely correct. There was testimony that Rizzolo drank beer in excess of the quantity he represented in his application, he was addicted to drinking, and there was testimony that he was at times an inebriate and that he was engaged at one time in conducting a grocery store and incidentally in the sale of alcoholic liquors therein, from the effects of which he may have contracted cirrhosis of the liver resulting in his death; from which testimony standing alone it can be rationally inferred that he misrepresented the facts to the defendant when he applied for this policy. It has been held, however, that the mere fact that the insured conducted a grocery store in which at times he sold alcoholic liquor was not necessarily inconsistent with his statement in an insurance application that he was not engaged in the sale of intoxicating liquor. *McGurk* v. *Metropolitan Life Insurance Co., 56 Conn. 528.* And so, where the insured, who was a waiter in a hotel, and engaged, *inter alia,* in dispensing drinks, represented to the company that he was not engaged in the sale of alcoholic beverages. *Guillinan* v. *Metropolitan Life Insurance Co., 69 Vt. 469.* The rationale of these determinations is that it must be left to the jury, under the circumstances, to conclude whether in making the answers the insured was acting *mala fide* or *bona fide,* and that an instruction for the defendant under such circumstances would be erroneous. *Connecticut Life Insurance Co.* v. *Union Trust Co., 112 U. S. 250.*

The testimony above referred to, however, does not stand alone, but is directly contradicted by witnesses for the plaintiff who, though they may not outnumber the defendant's wit-

nesses, are entitled to be believed by a jury unless we lay down the rule that the number of witnesses must be the controlling factor to the exclusion of other elements of credibility which the jury have a right to consider. The rule is directly to the contrary. The maxim is *"Ponderantur testes non numerantur;"* and so it is laid down by writers of distinction that there may be cases where the testimony of one witness may be more trustworthy than the opposing testimony of many. 2 *Best Ev.* 596; *Stark. Ev.* 832.

We have recognized that rule in the determinations of this court. *Campbell* v. *Delaware and Atlantic Ice Co.*, 41 *Vroom* 195; *Bowell* v. *Public Service Corporation*, 48 *Id.* 231.

The final objection to the verdict is the claim that the plaintiff had no insurable interest in the life of the insured.

As early in the history of life insurance in this state as 1854, in an opinion by Mr. Justice Elmer, in this court, it was held that it was not necessary for the plaintiff in an action on a policy of insurance on the life of another to show that he had an interest in that life. *Trenton Mutual Life Insurance Co.* v. *Johnson*, 4 *Zab.* 576.

It developed in the testimony of this case that the plaintiff was a niece of the deceased, for whom he had always manifested great affection; that from childhood she was a frequent visitor at his home where she often remained as her uncle's guest. Testimony on these lines was being developed when the defendant's counsel objected to it as immaterial and the court thereupon excluded it. We think, therefore, that the defendant cannot now allege its materiality, but is bound by the course he pursued in excluding it in the trial court.

Aside from that, we think there was sufficient developed in the testimony to enable us to conclude that by the weight of adjudication and the liberality of construction accorded to policies of life insurance in this country, the plaintiff had an insurable interest in her uncle's life. 25 *Cyc.* 704, and cases cited.

Our perusal of the entire case has led us to conclude that the rule should be discharged.