CASE 39—PETITION ORDINARY—APRIL 11.

# Brown's Admr. v. Louisville & Nashville Railroad Co.

APPEAL FROM JEFFERSON CIRCUIT COURT, COMMON PLEAS DIVISION.

1. APPOINTMENT OF ADMINISTRATOR.—The statute giving a right of action against a railroad company to the administrator of one who has been killed by the negligence of the company implies the right to have an administrator appointed in this State for the sole purpose of prosecuting such action, although the decedent was a resident of another State and had no personal estate in Kentucky and had no debts due him here.

2. SAME—RES JUDICATA.—As the question as to whether plaintiff was a lawfully appointed administrator was made by defendant on affidavits and by preliminary motion in the court below, and was decided in favor of plaintiff, it was no longer an open issue proper to be made again in the same case between the same parties, and plaintiff was right in not accepting such issue and in introducing no evidence on same on the final trial.

3. ACQUIESCENCE IN USE OF RAILROAD TRACK.—Simple acquiescence on the part of a railroad company in the use of its track by the public as a passway does not confer authority or right nor amount to license to so use it.

4. A TRESPASSER ON A RAILROAD TRACK who is struck and injured by a passing train can not complain that the train was too heavy, or the machinery insufficient, or that the train was imperfectly manned, as the company owes him no duty as to any

of these things. The only duty which the company owes to
a trespasser on the track is to use reasonable care to avoid in-
juring him after discovering his peril, and to keep a lookout in
cities where persons are likely to be found trespassing on its
right of way.

PHELPS & THUM FOR APPELLANT.

1. The court erred in giving a peremptory instruction for defendant.
Even if there be no dispute about the facts, yet if honest and
sensible men might reasonably draw different inferences about
the conclusion, the court will never take the case from the jury.
(Railroad Co. v. Stout, 17 Wall., 657; Murphy v. Canal Co., 9
Bush, 533.)

While it may be true that in general the engineer may assume
that a person in front of the train on the track will step out of
the way of a train, yet it is his duty to give warning, and the
evidence here is that he gave no warning until he was too close
to the man to stop the train or to take any step whatever, in
case it might be observed that the warning was ineffectual. It
is also the law that even in respect to trespassers the engineer
must keep a lookout, if the point where the party was injured
was in a city, or where trespassers are likely to be found.
(East Tennessee Coal Co. v. Harshaw, 16 Ky. Law Rep., 526;
McDermott v. Ky. Cent. R. Co., 93 Ky. 112; Hammill v. L. & N.
R. Co., 93 Ky., 346; L. & N. R. Co. v. Popp, 16 Ky. Law Rep.,
372; s. c., 96 Ky., 99.)

2. The Jefferson County Court had authority to appoint an adminis-
trator. The right of action which existed under the statute
constituted an asset, which authorized the appointment.

3. The court heard proof by affidavits which show the appointment
of the Trust Co. as administrator; and while the order book was
the best evidence, yet as the affidavits were read without ob-
jection, the court had the right to decide the jurisdictional ques-
tion upon them.

A. E. WILLSON AND JACOB MERRIWETHER OF COUNSEL ON
SAME SIDE.

LYTTLETON COOKE FOR APPELLEE.

1. The County Court of Jefferson county, Ky., had no right to ap-
point the Louisville Trust Company administrator of Thomas
Brown. (Fletcher's Adm'r v. Sanders, &c., 7 Dana, 347; McChord

v. Fisher's Heirs, 13 B. Monroe, 193; Thum v. Gresham, 2 Met.,
306; Hyatt v. James' Adm'r, 8 Bush, 10; Jeffersonville Railroad.
Co. v. Swayne's Adm'r, 26 Ind., 47; Perry, Adm'r, v. St. J. & West..
R. Co., 29 Kan., 420; and 11 Am. & Eng. R. Cases, 663.)

2. Passive acquiescence does not amount to a license. (Finlayson
v. Chicago, &c., R. Co., 1 Dillon, U. S. Ct., 579; Bancroft v. Bos-
ton, &c., R. Co., 97 Mass., 276; Gaynor v. Old Colony R. Co., 100
Mass., 508; Jeffersonville, &c., R. Co. v. Goldsmith, 47 Ind., 43;
Indiana, &c., R. Co. v. Hudelson, 13 Ind., 525; Galena, &c., R. Co.
v. Jacobs, 20 Ill., 478; Illinois, &c., R. Co., v. Hetherington, 83
Ill., 510; McLaren v. Indianapolis, &c., R. Co., 8 Am. & Eng. R.
R. Cases, 217 Yarnall v. St. L., K., C. & M. R. Co., 10 Am. &
Eng. R. R. Cases, 726; Hogan v. Chicago, &c., R. Co., 15 Am. &.
Eng. R. Cases, 439; Central R. Co. of Ga. v. Brinson, 10 Ga.,
207, and 19 Am. & Eng. R. Cases, 42; Glass v. Memphis &
Charleston R. Co., 10 Southern Reporter, 215.)

3. Railroad companies are entitled to the exclusive use of their
tracks, except at public crossings, etc., and owe no duty to tres-
passers upon their tracks or premises, until those operating their
trains see and know the peril in which trespassers have placed
themselves. (L. & N. R. Co. v. Lyter, 6 Ky. Law Rep., 223; L. &
N. R. Co. v. Howard's Adm'r, 6 Ky. Law Rep., 163; Nichols'
Adm'r v. L. & N. R. Co., 9 Ky. Law Rep., 702; Shackleford's
Adm'r v. L. & N. R. Co., 84 Ky., 43; K. C. R. Co. v. Gastineau's
Adm'r, 83 Ky., 121; John's Adm'r v. L. & N. R. Co., 10 Ky. Law
Rep., 758; L. & N. R. Co. v. Cooper's Adm'r, 7 Ky. Law Rep.,
102; Johnson's Adm'r v. L. & N. R. Co., 91 Ky., 651; Gresham v.
L. & N. R. Co., 15 Ky. Law Rep., 599; Oatts v. C., N. O. & T., P.
R. Co., 15 Ky. Law Rep., 87; McDermott v. K. C. R. Co., 14 Ky.
Law Rep., 437 and C. &c., R. Co. v. Yost, decided February 5,
1895; Akers v. Chicago, St. Paul, &c., R. Co. 60 Am. & Eng. R..
Cases, 30; Paducah & Memphis R. Co. v. Hoehl, 12 Bush, 41.)

JUDGE GRACE DELIVERED THE OPINION OF THE COURT.

The first question presented by this appeal is whether an
administrator appointed in Kentucky on the estate of a de-
cedent who was a non-resident of the State at the time of his
decease, and who had no personal estate in Kentucky at the
time of the appointment of the administrator here, other
than a claim, demand or right of action given by the Ken-
tucky statute to the administrator of a decedent who has

been killed by the gross negligence of a railroad company in Kentucky, is a lawfully-appointed administrator. This question was made by defendant on affidavits, and by preliminary motion in this case in the court below, and decided on hearing in favor of such right as a lawful appointment, and as conferring the right to sue for such damages given under our statute. The question being thus made and responded to, and having been decided by the court affirming such right, it was no longer an open issue, proper to be made again in the same case, between the same parties, and plaintiff was quite right in not accepting such issue and in tendering no evidence on same on the final trial.

In this case it appears from the record that a previous action had been filed in the Jefferson Circuit Court by Mrs. Brown, the wife of the decedent, who had been appointed, by the county court of Clark county, Indiana, administratrix of her husband's estate, that being the county of his residence at the time of his death, and that this suit had been dismissed at the instance of the defendant, because, as held by the court, the foreign administratrix could not sue in Kentucky on a demand of this kind. Thereupon, and within the year given by the statute, the Louisville Trust Company was appointed the administrator by the Jefferson County Court and so files this suit. And if the same objection is still to be heard to this right of action by the administrator in Kentucky, then the estate of decedent is without remedy, although a right of action is given to the administrator of any one killed in Kentucky by the gross negligence of a railroad company, its agents or employes. And thus the benefits of the statutes intended for the use of the widow and children of such an one would be lost and destroyed by the decisions of the courts in denying to both jurisdictions the right to appoint an administrator who can

maintain such an action.     We scarcely think the courts should voluntarily involve themselves in such an absurdity, nor by decisions of this kind deliberately set themselves up to defeat the sovereign legislative will of the State, in an attempt to confer so material and just a benefit upon the widow and children of one so killed by the gross negligence of a railroad company.

We do not find that this question has been heretofore distinctly decided by this court, but deeming it of importance, and as presenting a case likely often to arise, we have thought proper to dispose of same.

Speaking strictly within the line of the General Statutes on this subject, defining when, under what circumstances and what courts shall have power to appoint an administrator for a non-resident decedent, it may be that the matter sued for in this action is not a debt, or demand belonging to or owned by the decedent at the time of his death. Neither is it strictly personal estate of the decedent.   But beyond these general statutes we think the particular statute applicable to cases of this kind, wherein the right of action is expressly given to an administrator, necessarily implies the right to have an administrator appointed by the local courts for this purpose alone, if there be no other necessity or right or authority for such an appointment. And we deem the court of the county where the injury was done and where the man died the proper court to entertain such jurisdiction.

A further question presented by this record arises upon the action of the court below in giving a peremptory instruction to the jury to find for the defendant.

The evidence discloses that this accident happened on that part of the line of defendant's railroad in the city of Louisville running from the eastern end of the city south-

wardly, and westwardly to the western end of the city, and on that part of their track lying between Baxter Avenue and Broadway, a distance of something like ten thousand feet, running south from Baxter Avenue to Broadway. And that within this distance there are no streets or other public passways crossing defendant's line of railway, though there are streets both east and west of same (some distance off), and running parallel with the track of defendant.

It thus appears that this line of railway and road-bed, tracks and side tracks, switches, and all appliances necessary for the use of same, were the exclusive property of the defendant company, disconnected with any right of use in the public or in any individual members of the public, not a servant of the defendant corporation. It was while the decedent, Thomas Brown, was traveling along this right of way, going south from Baxter avenue to Broadway, that he was, on the 5th of November, 1891, run over and killed, in the open daylight, about 3 or 4 o'clock in the afternoon, by a freight train of the defendants being then moved along their tracks, in the same direction that plaintiff's decedent was traveling.

Quite a number of witnesses introduced by plaintiff speak of this accident, under divers circumstances, and at different places, in the vicinity, most of them speaking and noting the usual signal given by the railroad in case of danger—the regular alarm signal. Those of them who speak of the near approach of the train to the deceased, fix the distance as they saw it after coming from their several positions, and after hearing the repeated alarm signals, and they differ materially as to the time that elapsed between the first signal given and the time they first obtained sight of deceased and the approaching train. Some noticed decedent walking along

this track, with his back to the approaching train, and some say that before decedent was struck they think his foot was fastened in the frog, or between the rails of some of the several switches making off from the main track. Some witnesses say they saw another person attempting to pull decedent off the track from immediately in front of the near-approaching train; other witnesses claim to have noticed a shoe worn by the decedent pulled from the frog or switch, where it was fastened.

Some of the witnesses give the opinion that the train was moving at the rate of seven or eight miles an hour. The general theory of plaintiff seems to be that decedent's foot was fastened in the frog or switch, so that he could not release same, and thus he was run over by the train.

In all this testimony, however, we think we may say that none of the witnesses introduced by plaintiff undertook to say what had been done, or what was being done by the engineer and other employes of the railway company then operating said train to avoid any injury to deceased. No one for plaintiff professes to tell just where or when decedent came on the track, nor just where or when defendant's employes first discovered him in any dangerous or perilous position, with reference to the engine and cars of defendant.

Plaintiff's theory, even as to how this injury occurred, as set out in his original and several amended petitions, is not very clear or well defined. In his original petition he says it was by reason of the gross and wilful negligence of the defendants in this, that they did see the perilous position of decedent in time to have avoided the injury, or that they could have seen his perilous condition by the use of ordinary diligence for this purpose, complaining that the train was a heavy one and that the speed was too great, and that

the agents of defendant did not give the danger signal until it was too late to avoid the injury to decedent. And in their original petition they attribute the failure of the decedent to get off the track to the fact that his foot was fastened in a frog. By a later amendment they say they do not know whether it was a frog or a switch that decedent was fastened in.

In another amendment they say the brakes used on the train were insufficient, in kind and number, and too weak, to haul the train running at the rate of speed that it was traveling at the time the injury occurred.

And by a still later amendment they say that the train was imperfectly manned, not by a sufficient number of brakemen.

As to these several amendments and the charge made in and by them, we feel quite authorized to say that there was no evidence to show that the train was greater or heavier than trains generally transported. Nor was the speed shown to be at a dangerous rate, nor the brakes defective in any way, nor insufficient; nor that there was less than the usual number of brakemen then in position and service on the train.

It was claimed by plaintiff that this railway track and the embankment on which some of it was built was used by the public to a considerable extent, both at that time and for a considerable time before the accident. And plaintiff says that thereby it became and was a public highway, and that defendant failed to keep a lookout for decedent or other travelers on said highway.

Plaintiff's manner of interrogating the witnesses, as well as the line of argument in his brief, shows that he relies for a recovery upon these several matters of default and negligence of the railway company hereinbefore recited.

From the evidence we draw this conclusion, that the deceased, Thomas Brown, at the time of his death was a trespasser on the road of defendants; that he was a wrongdoer, there without right or authority.

We think the better doctrine is, that simple acquiescence on the part of a railroad company in the use of its track in this way does not confer authority or right, nor amount to license so to use.

That decedent being a trespasser and a wrongdoer at the time of his injury, had no right to complain of the size or weight of the train, nor of its speed (further than it should not be run in a city at a reckless and dangerous rate), nor of its machinery or brakes, that they were insufficient, nor that it was not properly manned.

All these things, so far as decedent was concerned, were purely matters within the sound discretion of the railroad company. True as to the general public at public crossings and to its own passengers the railroad company may owe all these duties, but not to plaintiff's decedent at the time and place of the injury.

The doctrine as to actionable negligence is that it must be a failure to discharge some duty devolved on the railroad company to the individual entitled to the right, and not for a failure of duty to others than himself.

So that a trespasser and a wrongdoer can not be heard to argue and say that the train was too heavy, or machinery insufficient, or that the train was imperfectly manned. There is this right, however, that belonged to the decedent as one of humanity, and that is, that it was the duty of the railroad company after becoming aware of his danger to use all reasonable care to avoid his injury, and this has been extended by the decisions of our court to include the duty on the part of the railroad company, its agents and employes,

to keep a lookout along its line of railway, in cities where persons are likely to be found trespassing on its right of way, and this duty, so extended, is all that has been guaranteed to a trespasser and a wrongdoer. Along this line of duty imposed upon the railroad to the deceased, plaintiff's evidence fails to show any negligence on the part of the railroad company.

We do not recognize the necessity of any extension of this general statement of the doctrine. We think, from a careful review of the evidence in this case, that it failed to show any such negligence on the part of the railroad company whereby decedent came to his death. Neither the facts given in evidence by plaintiff's witnesses, nor any reasonable deduction fairly to be drawn from them, bring the case within the line of responsibility. Of course, in sustaining the court in giving a peremptory instruction to find for defendant, we base it solely on the testimony offered by the plaintiff; and while the court below declined at first to give this peremptory instruction, requiring the defendants to introduce their firemen and engineer, thinking, possibly, they might develop something in behalf of plaintiff's case, yet when they failed to do so, the court then gave the peremptory instruction.

We think the general view of the law of this case, herein indicated, is supported by the following decisions of our own court.

L. & N. R. Co. v. Lyter, 6 Ky. L. R., 223; L. & N. R. Co. v. Howard's Adm'r, 82 Ky., 212; Nichol's Adm'r v. L. & N. R. Co., 9 Ky. L. R., 702; Shackleford's Adm'r v. L. & N. R. Co., 84 Ky., 43; John's Adm'r v. L. & N. R. Co., 10 Ky. L. R., 758; L. & N. R. Co. v. Cooper's Adm'r, 7 Ky. L. R., 102; Johnson's Adm'r v. L. & N. R. Co., 91 Ky., 651; Oatts v. C., N. O. & T. P. R. Co., 15 Ky. L. R., 87.

Wherefore the judgment of the lower court is affirmed.